IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HUANFANG HU, | CASE NO. 4:26-cv-113 |
| Petitioner | DISTRICT JUDGE JAMES R. KNEPP II |
| vs. | |
| KEVIN RAYCRAFT, *Acting Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, et al.*, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondents.[1] | **REPORT AND RECOMMENDATION** |

Petitioner Huanfang Hu has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court grant Hu's petition.

---

[1]     The proper respondent in an immigration habeas for a noncitizen detained in this District is the Field Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement. *Mendoza v. Raycraft*, No. 4:25-cv-2183, 2025 WL 3157796, at *8 (N.D. Ohio Nov. 12, 2025). The Court should therefore dismiss from this action the Attorney General and the Secretary of the Department of Homeland Security. *See Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

## Background

*Factual background and Immigration Court proceedings*[2]

Hu is 44 years old and a Chinese citizen. Doc. 1, at 1 ¶1.[3] She entered the United States without being inspected through Mexico, at or near Otay Mesa, California, on April 8, 2024. *Id.* The next day a Border Patrol agent issued Hu a Notice to Appear (NTA), placing her in immigration removal proceedings, Doc. 1-2, and released her, Doc. 9-1, at 1.

The Notice to Appear did not allege that Hu was an arriving alien. Rather, it alleged that she was "an alien present in the United States who ha[d] not been admitted or paroled." Doc. 1-2, at 1. The Notice to Appear directed Hu to appear for a removal hearing on June 6, 2025, in New York City. *Id.*

In June 2024, Hu, through counsel, filed in the New York Immigration Court a written pleading conceding the truth of the allegations in the Notice to Appear. Doc. 9-2. Hu also filed an I-589 asylum application. Doc. 1, at 1, ¶2.

On July 11, 2025, Hu was taken into custody during an enforcement operation in Parma Heights, Ohio. Doc. 1, at 5, ¶22. She was not given bond.

---

[2]    "At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor." *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" by the Court. *Id.* at 546 (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)). Gaps in Hu's recitation of events have been filled in by documents that the government has attached to its opposition brief.

[3]    The Court cites the CM/ECF-generated page numbers at the top of the parties' filings.

2

*Id.* On July 18, Hu requested a bond hearing. Doc. 9-5, at 1–2. On July 21, the government issued Hu a Form I-261, alleging an additional ground of removability. Doc. 9-3 (Form I-261, *Additional Charges of Inadmissibility/Deportability*). On July 24, the Immigration Judge denied Hu's bond eligibility because, under *Matter of Q. Li*, 26 I&N Dec. 66 (BIA 2025), the immigration judge lacked jurisdiction to determine bond.[4] Doc. 9-5, at 9. In September, Hu appealed this ruling. Doc. 1, at 5–6, ¶22. Hu's appeal remains pending. Doc. 1, at 5–6, ¶22. Hu has filed subsequent motions for bond hearings, which have all been denied. *Id.* at 5–6, ¶22. Meanwhile, Hu has not yet had an asylum hearing because the Immigration Court has no access to the Hebei interpreter that Hu needs. *Id.* at 14–15, ¶65. Hu has thus remained in custody at Mahoning County Jail since July 11, 2025. Doc. 1, at 2, ¶4; Doc. 9-4. Hu's Immigration Court venue changed from New York to Cleveland and proceedings remain pending on the Cleveland Immigration Court docket. Doc. 1, at 1–2; Doc. 9-4.

---

[4] In *Matter of Q*, 29 I. & N. Dec. 66 (BIA 2025), Board of Immigration Appeals held that "[a]n applicant for admission who is arrested and detained without a warrant while arriving in the United States … and subsequently placed in removal proceedings is detained under … 8 U.S.C. § 1225(b) … and is ineligible for any subsequent release on bond under … 8 U.S.C. § 1226(a)." *See also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (BIA 2025) (finding that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission" based on the "plain language of … 8 U.S.C. § 1225(b)(2)(A)."

*Hu's habeas petition*

On January 15, 2026, Hu filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. Hu states that she is being detained unlawfully and seeks "enforcement of her rights as a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.)." *Id*. at 2, ¶3; *see also id*. at 12 (describing count one of her petition as a violation of the Immigration and Nationality Act). Alternatively, she asks the Court to order her release "unless Respondents provide a bond hearing under 8 U.S.C. § 1226(a) within seven days." *Id*. at 3, ¶13. In count two, Hu alleges a due process violation for her detention without bond and the government's failure to provide her with an asylum hearing. *Id*. at 14–15.

Respondents filed an opposition. Doc. 9. They contend that the Court lacks jurisdiction to review Hu's claims. *Id*. at 5–10. Respondents also argue that the *Bautista* case "has no preclusive effect here"; Hu has failed to exhaust administrative remedies, which should not be excused due to futility; and that Hu's due process claim fails. *Id*. at 10–14.

**Legal Standard**

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person who demonstrates that she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). An alien may challenge the lawfulness of immigration detention through a writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that "the

writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Although the Court lacks jurisdiction in habeas over issues such as challenges to the legality of a removal order, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018), it has jurisdiction to consider whether a noncitizen is lawfully detained, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "'appropriate remedy to'" determine the legality of a person's custody) (quoting 3 Commentaries on the Constitution of the United States § 1333, p. 206 (1833)).

**Discussion**

*1. The Court has jurisdiction over Hu's petition.*

Respondents argue that under 8 U.S.C. § 1252(a)(5), (b)(9) and (g), this Court lacks jurisdiction to review Hu's petition. *See* Doc. 9, at 5–6, 8–10. Before discussing these provisions, it is worth noting that Section 1252 is entitled "judicial review of orders of removal." While "section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (citations omitted). So it is questionable at the start whether any of the provisions in Section 1252 would apply to Hu, who is not challenging an order of removal.

In any event, Respondents argue that "Section 1252(g) ... categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien.'" Doc. 9, at 10 (quoting 8 U.S.C. § 1252(g)). Respondents also argue that "[u]nder § 1252(b)(9), 'judicial review of all questions of law ... including interpretation and application of statutory provisions ... arising from any action taken ... to remove an alien from the United States' is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order." *Id*, at 8 (citing 8 U.S.C. § 1252(b)(9)).

Respondents are mistaken. *See Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (the right of a "person detained by the government" to "challenge the legality of h[er] confinement through a petition for a writ of habeas corpus .... extends to those persons challenging the lawfulness of immigration-related detention") (citing *Zadvydas*, 533 U.S. at 688, and *Demore*, 538 U.S. at 517).

First, Section 1252(g) does not bar, categorically or otherwise, Hu's claims. Section 1252(g) provides in relevant part that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

> commence proceedings, adjudicate cases, or execute
> removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Based on this statute, Respondents argue that the Secretary of Homeland Security's "decision to *commence removal proceedings* includes the decision to detain pending such removal proceedings." Doc. 9, at 10. Respondents' position, however, ignores the Supreme Court's caution that the jurisdictional limits detailed in Section 1252(g) have a "narrow" reach, and apply only to "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (explaining that the Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes a 'general jurisdictional limitation'") (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Indeed, the Supreme Court has made clear that Section 1252(g) "applies" "narrow[ly] … only to three discrete actions that the Attorney General may take:" the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *American-Arab Anti-Discrimination Comm*, 525 U.S. at 482. Outside of these three categories, the Supreme Court has noted that there are "many other decisions or actions that may be part of the deportation process," such as "the decisions to open an investigation, to surveil the suspected violation, to reschedule the deportation hearing, to include various provisions in the final order that is the product of

7

the adjudication, and to refuse reconsideration of that order." *Id*. In this way, Section 1252(g) is "not relevant" to the consideration of a court's jurisdiction to consider an immigration habeas petition beyond the three enumerated events. *See St. Cyr*, 533 U.S. at 311 n.34 (relying on *American-Arab Anti-Discrimination Comm*).

A three-justice plurality of the Supreme Court has more recently affirmed the narrow construction of Section 1252(g). *See Jennings v. Rodriquez*, 583 U.S. 281, 294 (2018) (plurality opinion). The plurality reiterated that the Court "did not interpret [the phrase 'arising from'] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id*. at 294.

Here, the Respondents submit that the Department of Homeland Security *commenced removal proceedings* against Hu because Hu filed an asylum application and is currently in removal proceedings. Doc. 9, at 10. But Hu's "detention does not arise from the government's 'commenc[ement] of proceedings,' which begins with the filing of an NTA in an immigration court." *Mahdawi v. Trump*, 136 F.4th 443, 450–51 (2d Cir. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025)). Indeed, Respondents did not detain Hu until more than a year after they initiated her removal proceedings.

Respondents' jurisdictional argument, regarding Section 1252(g), thus fails. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("there is no

way to read [Section 1252(g)'s] legislative history as evincing 'a clear statement of congressional intent to repeal habeas jurisdiction' over all detention claims. To the contrary, § 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute 'cause[s] or claim[s]' that 'aris[e] from the decision or action by the Attorney General to ... execute removal orders.'") (citation omitted).

Next, Respondents argue that Sections 1252(a)(5) and 1252(b)(9) bar this Court's "review of decision to detain and/or remove." Doc. 9, at 8. Section 1252(a)(5) states that the court of appeals is the "sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" except for subsection (e). Under Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[s] 'judicial review' of immigration proceedings into one action in

the court of appeals." *St. Cyr*, 533 U.S. at 313.[5]  But the Court has made clear that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id.* (emphasis added). As a result, "§ 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." *Id.* at 314; *see id.* at 302 (noting that the writ of habeas corpus historically "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes"); *see also Ozturk*, 136 F.4th at 399. Here, Hu is not challenging an order of removal.  Respondents therefore have not shown that section 1252(b)(9)'s jurisdictional-bar applies to Hu's petition.

For all of the reasons stated, the Court should find that it possesses jurisdiction to consider Hu's Petition challenging the constitutionality of her detention.

### 2. *Hu is excused from administrative exhaustion*

Respondents state that Hu must exhaust her administrative remedies and assert that she has not done so. Doc. 9, at 12–14. Hu does not disagree that exhaustion is required and that she has not done so. Rather, Hu argues that

---

[5]     Congress amended the Immigration and Nationality Act in response to *St. Cyr*, to eliminate habeas as a method to review final orders of removal for criminal aliens. *See* REAL ID Act of 2005, Pub. L. 109-13. Div. B, § 106, 119 Stat. 231; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Importantly, although "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal," it "did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006).

her failure to exhaust should be excused on futility grounds. Doc. 1, at 11, ¶¶45–46; Doc. 10, at 15–16.

"When 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). "[E]xhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" *Id.* at 594 (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)). "Additionally, '[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.'" *Id.* (quoting *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)).

Even assuming that exhaustion is required, Hu has shown that exhaustion would be futile.

Hu explains that the Board of Immigration Appeals "'has predetermined the disputed issue' by having a 'clearly stated position' that [Hu] is not eligible for the relief sought." Doc. 10, at 16 (quoting *Shearson*, 725 F.3d at 594 and citing *Mosqueda v. Noem*, No. 5:25-cv-2304, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025); *see also* Doc. 1, at 11–12, ¶46. This is true; the Board of Immigration Appeals has determined that petitioners like Hu are not eligible for bond hearings. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (BIA

11

2025); *Matter of Q*, 29 I. & N. Dec. 66 (BIA 2025). Exhaustion therefore would be futile. *See Alvaro Ramirez Moreno v. Lynch*, No. 4:26-cv-275, 2026 WL 496634, at *3 (N.D. Ohio Feb. 23, 2026) ("This Court cannot think of anything more clearly amounting to a 'futile gesture' than requiring Petitioner to spend time appealing the Immigration Court's decision to deny him a bond hearing to the very agency that passed down that unequivocal directive [in *Hurtado*]"). And the fact that Hu has a pending appeal in the Board of Appeals doesn't change this result. *See Barco Mercado v. Francis*, No. 25-cv-6582, -- F.Supp.3d --, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force [Petitioner] to request a bond hearing from an immigration judge … and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing [Petitioner] to seek judicial review of his [detention]...would be 'Kafkaesque.'").

For all of the reasons stated, the Court should determine that Hu is not required to exhaust her administrative remedies.

*3.  Mandatory detention under 8 U.S.C. § 1225(b) does not apply to Hu because she is subject to discretionary detention under 8 U.S.C. § 1226(a).*

Having concluded that this Court has jurisdiction and that exhaustion would be futile, I turn to the merits of Hu's claim.[6] The parties dispute whether Hu falls under 8 U.S.C. §§ 1225(b) or 1226(a). Under Section 1225, a noncitizen

---

[6]     Respondents present this issue as a jurisdictional bar. Doc. 9, at 6–8. I evaluate the issue on the merits, and, to the extent jurisdiction would be implicated, the outcome here would not bar this Court's jurisdiction.

"who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings*, 283 U.S. at 287. There are two categories of applicants for admission described in Section 1225, "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.*

Section 1225(b)(1) covers the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). Respondents argue that this provision "authorizes mandatory detention pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Doc. 9, at 6 (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). But Section 1225(b) covers *inspections* and describes events occurring at the time the non-citizen arrives in this country. *See also* 8 U.S.C. § 1225(b)(1)(A) ("Screening"); § 1225(b)(1)(B) ("Asylum interviews"). The specific subsection that the Respondents rely on references *mandatory detention* in the context of an *asylum interview*, which is conducted by an *asylum officer* when the non-citizen arrives in the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Here, there is no evidence showing that officers conducted an asylum interview with Hu when she arrived at the border. Indeed, Hu's Notice to Appear shows that this did not occur. Doc. 1-2, at 1 (NTA showing the box for this option is unchecked). Hu didn't express an intent to apply for asylum until nearly three months after she arrived in this

country. Doc. 9-2. Respondents therefore have not shown that Hu's detention is required under Section 1225(b)(1).

As for Section 1225(b)(2)(A), it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2) (emphasis added). By contrast, under Section 1226(a) "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). And immigration authorities "may release the alien on … bond … or … conditional parole." 8 U.S.C. § 1226(a)(2)(A), (B). Further, 8 U.S.C. § 1229a sets out the manner in which removal proceedings should occur but does not impose a detention requirement.

Respondents argue that Hu is subject to mandatory detention based on application of Section 1225(b)(2)(A) because she is an "applicant for admission." Doc 9, at 6. They also claim that Hu is subject to detention and ineligible for a bond hearing under 1229a because she in "currently in removal proceedings." *Id*., at 7. Hu contends that individuals like her "who have not been inspected and authorized by an immigration officer lack the trait to be categorized as 'applicants for admission.'" Doc. 10, at 7.

The heart of the parties' dispute comes down to Respondents' contention that *aliens seeking admission* are the same as aliens who are *applicants for*

14

*admission.* Doc. 5, at 20. An *applicant for admission* is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). By contrast, the term *seeking admission* is not defined by statute. So the Court turns to the phrase's plain or "ordinary meaning," which is often determined with reference to "grammar and dictionary definitions." *Niz-Chavez v. Garland*, 593 U.S. 155, 168–69 (2021).

The word "seek" means "to ask for," "to try to acquire or gain," or "to make an attempt." Seek, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seek (last visited Feb. 25, 2025). Because the word *seeking* is the present participle of the verb *seek*, its use "'implies some sort of present-tense action.'" *Curillo v. Noem*, No. 1:25-cv-1340, 2025 WL 3235737, at *5 (W.D. Mich. Nov. 20, 2025) (quoting *Martinez v. Hyde*, No. CV 25-11613, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). "'Seeking' requires something more than just passively being present in the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080, at *5 (N.D. Ohio Nov. 14, 2025).

And the thing the alien must be *seeking* is "admission." *Admission* is defined as "lawful entry ... into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" is

15

not defined but a commonly referenced dictionary says that it means "the act of entering." Entry, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/entry (last visited Feb. 25, 2025). And Black's Law Dictionary says that in this context, it means "[a]ny entrance of an alien into the United States, whether voluntary or involuntary." Entry, Black's Law Dictionary (12th ed. 2024).

> The Board has long defined "entry" into our country for immigration purposes to require (1) a crossing into the territorial limits of the United States; (2) inspection and admission by an immigration officer or actual and intentional evasion of inspection; and (3) freedom from official restraint.

*Lopez v. Sessions*, 851 F.3d 626, 630 (6th Cir. 2017), *abrogated on other grounds by Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020). Putting all of this together, *seeking admission* means presently trying to cross into the United States. *See Campbell v. Almodovar*, No. 1:25-cv-09509, 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025) (citing cases), *opinion clarified*, 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025). *But see Buenrostro-Mendez v. Bondi*, No. 25-20496, -- F.4th --, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026) (reaching the opposite conclusion). And Hu was not at the time she was detained trying to cross into the United States—she had been in the United States for over a year.

Respondents say that their reading is compelled by the Supreme Court's decision in *Jennings*. *See* Doc. 9, at 6. Other courts have dispatched this argument:

Binding Supreme Court precedent further supports the petitioner's read of the statute. In *Jennings v. Rodriguez*, the Supreme Court analyzed Sections 1225, 1226, and 1227 to determine whether "detained aliens have a statutory right to periodic bond hearings." 583 U.S. at 285. The Court made it clear that "Section 1225 authorizes 'the Government to detain certain aliens seeking admission into the country,' while Section 1226 'authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.'" *Sarmiento Guerrero*, 2025 WL 3214787, at *5 (quoting Jennings, 582 U.S. at 288) (emphasis in *Sarmiento Guerrero*); *see also Nielsen [v. Preap*, 586 U.S. 392, 396–97 [2019] (holding that Section 1226(a) applies to noncitizens "present in this country").

The government claims that *Jennings* stands for the proposition that "[a]pplicants for admission fall into one of two categories, 'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" (ECF No. 8 at 11 (quoting *Jennings*, 583 U.S. at 287).) The government's interpretation is not persuasive, because it takes the above language out of context. The quote upon which the government rests its theory appears in a discussion about "decid[ing] (1) who may enter the country and (2) who may stay here after entering." *Jennings*, 538 U.S. at 286. Justice Alito, writing for the majority, explained:

> That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).

17

> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).

*Id.* at 287 (quoting 8 U.S.C. § 1225). Read in context, the quoted language clearly refers to the "process ... at the Nation's borders and ports of entry." *Id.*; *see also id.* ("As relevant here, applicants for admission fall into one of two categories ..." (emphasis added)). Any possible doubt about the Court's meaning is erased by the Court's summary:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289. Thus, the government's argument that all "[a]pplicants for admission fall into one of two categories" under Section 1225 is inconsistent with the broader statutory scheme and with the Supreme Court's recent, clear explanation of that statutory scheme.

*Ye v. Maldonado*, No. 25-cv-6417, 2025 WL 3521298, at *5 (E.D.N.Y. Dec. 8, 2025).

Tellingly, immigration authorities in Hu's Notice to Appear alleged, by checking a box, that she is: "an alien *present* in the United States who has not been admitted or paroled." Doc. 1–2, at 1 (emphasis added). Authorities did not check the box immediately above that box, which provides "You are an arriving alien." Respondents' choice amounts to a judicial admission that Hu is *not* an arriving alien. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008)

(explaining that allegations in a Notice to Appear, like those in a complaint, are judicial admissions); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are judicial admissions by which [Plaintiff] was bound throughout the course of the proceeding") (internal quotation marks and alterations omitted)); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

Under the plain text of Hu's Notice to Appear, Hu was simply passively present in the United States without being admitted or paroled—and nothing more. "[A]s an immigrant arrested and detained while 'already in the country[,]' *Jennings*, 583 U.S. at 289, [Hu] falls … within § 1226(a)'s default rule," *Chavez*, 2025 WL 3187080, at *4. Section 1226(a) gives immigration judges broad discretion to permit or deny release on bond and "makes no distinction between admitted and unadmitted immigrants." *Chavez*, 2025 WL 3187080, at *5. The key is that Section 1226(a) makes discretionary bond available, rather than imposing mandatory detention. Respondents have not explained to whom they think Section 1226(a) might apply, or why Hu would not fall under this section.

Because Hu should have been, but was not, considered for release on bond under Section 1226(a), the Court should grant her petition and order the immigration court to conduct a bond hearing.

*4.  Hu has not shown that the Bautista decision is binding on this Court*

In late 2025, a California district court issued a series of orders in a case similar to this one. *See Bautista v. Santacruz*, No. 5:25-cv-1873, -- F.Supp.3d --, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025). The court also certified a Rule 23(b)(2) Bond Eligible Class for:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* at *32.

Hu contends that she falls within this class and that this Court "*must* apply the *Maldonado Bautista* final judgment." Doc. 10, at 10 (emphasis added). Respondents argue that "a district court in California has no jurisdiction over custodians located in other districts" and list other reasons that counsel against applying to Hu's case the judgment in the California case. *Id.* at 10–12.

The only legal authority that Hu cites to support her argument that this Court *must* take action based on the California court's judgment is *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *2 (E.D. Mich. Dec. 11, 2025). Doc. 10, at 11. The court in *Valasco-Sanchez* discussed the *Maldonado Bautista* case and agreed with its reasoning regarding the

20

application of 8 U.S.C. §§ 1225(b) and 1226(a). 2025 WL 3553672, at *2–4. The court did not find that the judgment in *Maldonado Bautista must* be applied in that case. *See id*. Because Hu has not shown that this Court is bound by the judgment in *Maldonado Bautista*, her argument fails.

### 5. Alternatively, Hu is entitled to relief on her due process claim

Even if the Court finds that Hu is subject to mandatory detention under Section 1225(b)(2), it should grant her petition and direct the immigration court to conduct a bond hearing under the Fifth Amendment Due Process Clause. The Fifth Amendment right to due process applies to all persons, including noncitizens, who are present in the United States. *Zadvydas*, 533 U.S. at 693.

Generally, Hu claims that her continued detention absent a bond hearing represents a violation of her right to due process. Doc. 1, at 14, ¶64; 15, at ¶¶69, 71. She also argues that the Immigration Court has not and cannot provide her with an asylum hearing because it doesn't have an interpreter who speaks the Hebei dialect that Hu speaks. *Id*. at 14–15, ¶¶65, 69.

Respondents' counter to Hu's argument that her detention without bond violates her due process rights "are tied to her failure to exhaust and are not plausible because she continues to file motions and appeals of the denial of bond." Doc. 9, at 13. But as already explained, Hu's exhaustion of remedies would be futile. Respondents assert that Hu is not entitled to a bond hearing under Section 1225, *id*., at 14, but this argument fails, as explained above.

Respondents contend that "even considering cases on prolonged detention," Hu would not be entitled to a bond hearing and accuse Hu of purposefully delaying her asylum hearing. Doc. 9, at 14. But the cases they cite are not on point. *Zadvydas* concerned detention after an alien receives a final order of removal. 533 U.S. at 682. *Demore* concerns mandatory detention for certain criminal aliens. 538 U.S. at 513. Hu has not received a final order of removal and no one has alleged that she is a criminal. And *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020), the last case Respondents rely on, Doc. 9, at 14, is inapplicable. That case concerns an alien with a reinstated removal order who was subject to detention under 8 U.S.C. § 1231, which is not at issue here. *Martinez*, 968 F.3d at 558.

Further, the merits of Gualpa's due process claim under the applicable balancing test justify relief. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Under this test the Court weighs: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *See Mathews*, 424 U.S. at 335.

First, Hu's liberty is at stake. Second, Respondents' position has been inconsistent. Hu was previously released and permitted to go about living for over a year in the United States during the pendency of her immigration

proceedings before being detained in 2025. These contradictions tend to show that Hu is at risk of being erroneously deprived of her freedom. The second factor thus weighs in her favor.

Lastly, based on the information described throughout this recommendation, Respondents have not and likely cannot show that it has any significant interest in Hu's continued detention. Indeed, the fact that they released Hu for over a year weighs against any potential argument by Respondents regarding this third factor.

Based on the above, I recommend that that the Court grant Hu's Petition and that the immigration court be ordered to conduct a bond hearing.

### Conclusion

Because Section 1225(b) is inapplicable to Hu, Respondents may not now impose mandatory detention pending her removal decision. I recommend that the District Court grant Hu's petition and require the immigration court to conduct a hearing to determine whether, consistent with this Court's determination, Hu is entitled to discretionary bond under Section 1226(a).


Dated: February 26, 2026

/s/James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).